S/I

FEE PAID

FILED
2023 FEB -7 PM 2:24
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: EEE

Tyesha Jackson Wise
815 N. LaBrea Avenue #83
Inglewood, CA 90302
323-306-4965
Tjacksonwise@icloud.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TYESHA JACKSON WISE,

    Plaintiff,

vs.

UPGRADE, INC. AND NCB MANAGEMENT SERVICES, INC.

    Defendant

Case No.:

COMPLAINT AND DEMAND FOR JURY TRIAL (BREACH OF CONTRACT)

LACV23-00921-DOC-PVCx

Plaintiff, TYESHA JACKSON WISE brings this action against Defendant(s) UPGRADE, INC. and NCB MANAGEMENT SERVICES, INC., and alleges the following:

### INTRODUCTION

1. This is a civil action for breach of contract arising out of Defendant(s) UPGRADE, INC. and NCB MANAGEMENT SERVICES, INC., failure to perform its obligations under a contract entered into between the parties.

### JURISDICTION AND VENUE

2. Jurisdiction of the Court arises under 28 U.S. Code § 1331 and this Court has supplemental jurisdiction over related state law and common law claims asserted herein pursuant to 28 U.S. Code § 1367.

3. Venue is proper in the United States District Court, Central District of California pursuant to 28 U.S. Code § 1391 for the following reasons: (i) Plaintiff resides within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendant(s) are also located within this judicial district and conducted business within this judicial district at all relevant times.

### PARTIES

4. Plaintiff, TYESHA JACKSON WISE, is a natural person residing in Inglewood, Los Angeles County, CA 90302.

5. Defendant, UPGRADE, INC is a corporation located in San Francisco, California.

COMPLAINT AND DEMAND FOR JURY TRIAL (BREACH OF CONTRACT) - 1

6. Defendant, NCB MANAGEMENT SERVICES, INC., is a corporation located in Trevose, PA.

7. Defendant(s), UPGRADE, INC. AND NCB MANAGEMENT SERVICES, INC., conduct business in Los Angeles County, where Plaintiff resides.

### FACTS

8. On or around September 20, 2021, Plaintiff and Defendant UPGRADE, INC., entered into a contract, a copy of which is attached hereto as EXHIBIT A.

9. Despite repeated requests by Plaintiff, Defendant UPGRADE, INC., failed to investigate and/or resolve billing error.

10. Defendant, UPGRADE, INC., took adverse action against Plaintiff.

11. As a result of Defendant UPGRADE, INC., breach of contract, Plaintiff has suffered emotional distress and financial injury.

### CAUSE OF ACTION

12. Plaintiff hereby asserts a cause of action for breach of contract against Defendant(s) UPGRADE, INC. and NCB MANAGEMENT SERVICES, INC., for failing to perform their obligations under the contract between the parties.

### PRAYER FOR RELIEF

13. WHEREFORE, Plaintiff prays for relief as follows:

   a. Defendant(s) be found to have breached the contract between the parties;

   b. Plaintiff be awarded damages in the amount of $10,001;

   c. Plaintiff be awarded costs of suit incurred in this action;

   d. Plaintiff be awarded such other relief as the Court deems just and proper/

   Dated this 6th day of February, 2023.

   Tyesha Jackson Wise, In Pro Per

   Tyesha Jackson Wise
   815 N. LaBrea Avenue #83
   Inglewood, CA 90302
   (323) 306-4965
   Tjacksonwise@icloud.com

COMPLAINT AND DEMAND FOR JURY TRIAL (BREACH OF CONTRACT) - 2

<u>**Serve Defendant(s) via certified mail and/or email at the following addresses:**</u>

UPGRADE, INC.
275 Battery Street, Suite 2300
San Francisco, CA 94111
support@upgrade.com


1505 Corporation
112
C T Corporation
c/o NCB MANAGEMENT SERVICES, INC.
330 N. Brand Boulevard, Suite 2300
Glendale, CA 91203

Info@ncbi.com

COMPLAINT AND DEMAND FOR JURY TRIAL (BREACH OF CONTRACT) - 3

## Borrower Agreement

Last Revised: August 19, 2021

Loans made by Blue Ridge Bank, a nationally-chartered commercial bank, Member FDIC

This Borrower Agreement ("Agreement") is entered into between you ("you") and Blue Ridge Bank, a nationally-chartered, FDIC-insured commercial bank ("Bank," "we," or "us"). Upgrade, Inc. (DBAs include Universal Credit and the names at www.upgrade.com/landing/dba) ("Upgrade") operates a national online consumer loan marketplace platform via its website(s) and mobile application(s), including www.upgrade.com ("Site"), through which you may request and apply for consumer installment loans from Bank. If you request a loan that is approved by us, then your loan will be governed by the terms of the Loan Agreement and Promissory Note, attached herein as Exhibit A. We reserve the right to revise the Loan Agreement and Promissory Note from time to time. The version in effect at the time of your loan request will govern the terms of your loan with us.

1. **Use of the Site/Loan Applications.** Under this Agreement, you may request unsecured consumer installment loans originated by Bank through the Site. By entering into this Agreement, you agree to comply with Upgrade's Terms of Use and all other rules or procedures set forth and described on the Site. By submitting a loan request or application, you agree to receive loan proceeds in the amount requested and you agree to repay timely all installments required under your Loan Agreement and Promissory Note, subject to any right to cancel you may have as described below. You understand that each loan request or application is subject to Bank's current loan underwriting criteria, which may change from time to time. If you have been approved for and/or received a new consumer loan from any lender within sixty (60) days of submitting an application through the Site, you may be ineligible for a loan through the Site at the time of application submission. You may subsequently submit a new application through the Site once you become eligible. You agree that all disputes between you and Bank, Upgrade, or any subsequent holder of your Note will be resolved through binding arbitration as described in Section 8 below, subject to your right to opt-out. You agree not to request a loan or use any loan proceeds to pay post-secondary education expenses, to buy or sell securities, or for any illegal purpose. If you are a joint applicant, you understand that both applicant's disclosures will be made available to you through Upgrade's borrower dashboard.

2. **Loan Terms.** If your loan is approved and funded, your loan will have a principal loan amount, fees, and interest as described on your federal Truth in Lending Act disclosure ("Truth in Lending Disclosure") and in your Loan Agreement and Promissory Note. You understand that we will provide you with an initial loan disclosure at the time of application that contains estimates based on the terms of your loan request, and that those initial estimates are subject to change prior to issuance of your loan. At the time of loan issuance, you will be provided with a final Truth in Lending Disclosure and Loan Agreement and Promissory Note, which will be deposited into your personal Upgrade account and may be accessed through your Upgrade online dashboard. All loans obtained through the Site will be funded by the standard Automated Clearing House method ("ACH"), and loan proceeds may take up to four (4) business days to post to your bank account. If your loan is subject to an origination fee, the fee will be deducted from your loan proceeds at the time of origination. Origination fees will not be refunded in any instance. Origination fees are included in the total loan amount, which accrues interest over the life of the loan.

3. **Authorization to Obtain Your Credit Report.** By entering into this Agreement and requesting a loan, you authorize Upgrade and Bank, and their agents, servicers, and assigns to obtain your credit report from one or more consumer reporting agencies, such as TransUnion, Experian, or Equifax. You acknowledge that Bank and Upgrade may use the credit report for any purpose permitted by law, including: (i) to authenticate your identity; (ii) to make credit decisions; (iii) to determine your current debt-to-income ratio; and (iv) to obtain your credit score. By proceeding with your loan application, you authorize us to contact third-parties to verify the information in your credit report without further notice to you.

4. **Limited Power of Attorney.** You hereby grant to Upgrade a limited power of attorney and appoint Upgrade and its designees as your true and lawful Attorney-in-Fact and agent, with full power of delegation, substitution, and re-substitution, for you and in your name, place, and stead, in any and all capacities, to complete and execute the Loan Agreement and Promissory Note in the form attached herein as Exhibit A, but which incorporates the final accepted terms as indicated on the final Truth in Lending Disclosure deposited into your Upgrade account prior to loan funding. You further authorize Upgrade to perform each and every act necessary to be done in connection with executing your Loan Agreement and Promissory Note as you might or could do in person, and to approve, execute, and deliver the provisions of any instruments, documents, agreements, powers, releases, and certificates related to the Loan Agreement and Promissory Note and perform each and every action required, including but not limited to any legal or beneficial assignment of the Loan Agreement and Promissory Note. This Power of Attorney is limited to the purpose described above and will expire automatically upon the termination of this Agreement. You may revoke this Power of Attorney by emailing support@upgrade.com or calling 1(855) 997-3100 and closing your Upgrade account. However, if your loan request or application has been approved, you must revoke this Power of Attorney prior to the loan proceeds being transferred to your bank account. Once the Loan Agreement and Promissory Note is signed by Upgrade as your Attorney-in-Fact on your behalf, it is deemed executed and is thereafter your binding obligation. If you chose to revoke this Power of Attorney prior to execution of a Loan Agreement and Promissory Note, we will be unable to proceed with your loan request or application and your request or application will be considered withdrawn.

5. **Military Lending Act.** Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependents may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: the costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fees charged (other than certain participation fees for a credit card account). Your payment obligation is shown on the Truth in Lending Disclosure. Please call 1(855) 511-7676 toll free to have this disclosure provided to you orally. If you are a member of the Armed Forces or a dependent, certain terms of this Agreement prohibited under the Military Lending Act including the Arbitration Agreement contained in Section 8 of this Agreement, will not apply to you.

6. **Loan Servicing.** You acknowledge that all loans obtained through the Upgrade platform will be serviced by Upgrade. You also agree that Upgrade may delegate the servicing of your loan to a third party in its sole discretion without prior consent or notice.

7. **TCPA Consent.** By providing us with your mobile telephone number, you expressly consent to be contacted by us, our agents, representatives, affiliates, or anyone calling on our behalf for any and all purposes arising out of your relationship with us, your use of Upgrade's Site, or any agreement you have entered into with Upgrade or us. You agree we may contact you in any way including SMS text messages, calls using prerecorded messages or artificial voice, and calls and messages delivered using an automated telephone dialing system or an automated texting system. You understand that automated messages may be played when the telephone is answered, whether by you or someone else. You also agree that representatives may leave you messages on your answering machine, voice mail, or via text if you don't answer. Standard calling and text messaging rates will apply, based on your cellular telephone carrier and service plan.

During our online application process, you may be asked to provide your prior express written consent to receive prerecorded calls and texts to your mobile device for marketing purposes. We will not use autodialed or prerecorded calls or texts to contact you for marketing purposes unless you provide us with that prior express written consent.

You understand that you do not have to consent to receive any autodialed or prerecorded calls or texts to your mobile phone number in order to use or enjoy our services and products. If you have already provided your consent, you may withdraw your consent to receive autodialed or prerecorded calls or texts to your mobile phone number by contacting Upgrade by email at support@upgrade.com or by calling Upgrade customer support at 1-(855) 997-3100.

8. **Arbitration Agreement.**

   **PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS. YOU HAVE THE RIGHT TO OPT OUT OF THIS ARBITRATION AGREEMENT AS DESCRIBED BELOW.**

   a. The parties to this Agreement agree that either you or Bank or its service provider Upgrade (or any subsequent assigns of the foregoing), may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section (the "Arbitration Provision"), unless you opt out as provided in paragraph (b) below. As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and Bank or Upgrade and/or any assign of Bank or Upgrade (or persons claiming through or connected with Bank or Upgrade and/or any assign of Bank or Upgrade), on the other hand, relating to or arising out of this Agreement and/or the activities or relationships that involve, lead to, or result from this Agreement, including (except to the extent

provided otherwise in the last sentence of paragraph (f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

b. You may opt out of this Arbitration Provision for all purposes by sending an arbitration opt-out notice to Blue Ridge Bank, c/o Upgrade, Inc., 275 Battery Street, 23rd Floor, San Francisco, CA 94111, Attention: Legal Department, only if received at the specified address within 30 days of the date of your electronic acceptance of the terms of this Agreement. The opt-out notice must clearly state that you are rejecting arbitration; identify the agreement to which it applies by date; provide your name, address, and social security number; and be signed by you. You may send the opt-out notice in any manner you see fit as long as it is received at the specified address within the specified time. No other methods can be used to opt-out of this Arbitration Provision. If the opt-out notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the opt-out notice on your behalf.

c. The party initiating arbitration shall do so with the American Arbitration Association (the "AAA") or JAMS. The arbitration shall be conducted according to, and the location of the arbitration shall be determined in accordance with, the rules and policies of the administrator selected, except to the extent the rules conflict with this Arbitration Provision or any countervailing law. In the case of a conflict between the rules and policies of the administrator and this Arbitration Provision, this Arbitration Provision shall control, subject to countervailing law, unless all parties to the arbitration consent to have the rules and policies of the administrator apply.

d. If Bank or Upgrade (or any assign of Bank or Upgrade) elects arbitration, Bank or Upgrade (or the assign, as the case may be) shall pay all the administrator's filing costs and administrative fees (other than hearing fees). If you elect arbitration, filing costs and administrative fees (other than hearing fees) shall be paid in accordance with the rules of the administrator selected, or in accordance with countervailing law if contrary to the administrator's rules. Bank or Upgrade (or the assign, as the case may be) shall pay the administrator's hearing fees for one full day of arbitration hearings. Fees for hearings that exceed one day will be paid by the party requesting the hearing, unless the administrator's rules or applicable law require otherwise, or you request that Bank or Upgrade (or the assign) pay them and Bank or Upgrade agrees (or the assign agrees) to do so. Each party to the arbitration shall bear the expense of its own attorneys' fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary herein.

e. Within 30 days of a final award by the arbitrator, any party to the arbitration may appeal the award for reconsideration by a three-arbitrator panel selected according to the rules of the arbitrator administrator. In the event of such an appeal, any opposing party may cross-appeal within 30 days after notice of the appeal. The panel will reconsider de novo all aspects of the initial award that are appealed. Costs and conduct of any appeal shall be governed by this Arbitration Provision and the administrator's rules, in the same way as the initial arbitration proceeding. Any award by the individual arbitrator that is not subject to appeal, and any panel award on appeal, shall be final and binding, except for any appeal right under the Federal Arbitration Act (the "FAA"), and may be entered as a judgment in any court of competent jurisdiction.

f. We agree not to invoke our right to arbitrate an Individual Claim you may bring in Small Claims Court or an equivalent court, if any, so long as the Claim is pending only in that court. NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS PRIVATE ATTORNEY GENERAL ON BEHALF OF OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF THE ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN A COURT AS CLASS REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A COURT. Unless consented to in writing by all parties to the arbitration, no party to the arbitration may join, consolidate, or otherwise bring claims for or on behalf of two or more individuals or unrelated corporate entities in the same arbitration unless those persons are parties to a single transaction. Unless consented to in writing by all parties to the arbitration, an award in arbitration shall determine the rights and obligations of the named parties only, and only with respect to the claims in arbitration, and shall not (i) determine the rights, obligations, or interests of anyone other than a named party, or resolve any Claim of anyone other than a named party; nor (ii) make an award for the benefit of, or against, anyone other than a named party. No administrator or arbitrator shall have the power or authority to waive, modify, or fail to enforce this paragraph (f) and any attempt to do so, whether by rule, policy, arbitration decision or otherwise, shall be invalid and unenforceable. Any challenge to the validity of this paragraph (f) shall be determined exclusively by a court and not by the administrator or any arbitrator.

g. This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the FAA. The arbitrator will apply substantive law consistent with the FAA and applicable statutes of limitations. The arbitrator may award damages or other types of relief permitted by applicable substantive law, subject to the limitations set forth in this Arbitration Provision. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court. The arbitrator shall take steps to reasonably protect confidential information.

h. This Arbitration Provision shall survive (i) suspension, termination, revocation, closure, or amendments to this Agreement and the relationship of the parties and/or assignee; (ii) the bankruptcy or insolvency of any party or other person; and (iii) any transfer of any loan or this Agreement to any other person or entity. If any portion of this Arbitration Provision is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. If an arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in paragraph (f) are finally adjudicated pursuant to the last sentence of paragraph (f) to be unenforceable, then no arbitration shall be had. In no event shall any invalidation be deemed to authorize an arbitrator to determine Claims or make awards beyond those authorized in this Arbitration Provision. THE PARTIES ACKNOWLEDGE THAT THEY MAY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF ANY PARTY ELECTS ARBITRATION PURSUANT TO THIS ARBITRATION PROVISION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY ANY PARTY.

i. EXCEPTION: Active duty military servicemembers and their dependents are exempt from arbitration to the extent provided for in the Military Lending Act.

9. **Assignment.** You may not assign or transfer your rights or obligations under this Agreement without our prior written consent. We may assign or transfer all or a portion of this Agreement and the related documents to a third party or an affiliate. Our rights under this Agreement shall inure to the benefit of our successors and assigns and your obligations under this Agreement shall be binding upon your heirs, personal representatives and permitted assigns.

10. **Termination.** We may terminate this Agreement in our sole discretion, with or without cause, by providing you with notice of the termination. If we determine that you have committed fraud, made a material misrepresentation, or otherwise failed to abide by the terms of any Agreement you have entered into with us, including the Upgrade Terms of Use, we may, in our sole discretion, terminate this Agreement and disable your Upgrade account. All loans outstanding at the time of termination shall remain in full force and effect until paid in full, regardless of the termination of this Agreement.

11. **Entire Agreement.** This Agreement together with the Upgrade Terms of Use represents the entire agreement between you and Bank regarding your use of the Upgrade platform to request loans from the bank, and supersedes all prior and contemporaneous communications, whether written or oral, between you and Bank with regard to your use of the Upgrade platform.

12. **Electronic Transactions and Disclosures.** This Agreement includes your express consent to electronic transactions and disclosures, which consent is contained in the document titled "Consent to Conduct Business Electronically," the terms of which are expressly incorporated herein in their entirety.

13. **Notices.** You consent to receive all notices and communications required in connection with this Agreement by email to the email address you registered with us when you created your Upgrade account. Delivery of such notices and communications shall be deemed to be made upon transmission. By registering an email address with Upgrade, you acknowledge that you have ownership and control over the email account associated with that address and you understand that we may send personal, private, confidential communications, including but not limited to collections-related communications, to you at that address. If your email address or any other contact information changes, you acknowledge that you must update your registered email address through the Upgrade Site, contact Upgrade at support@upgrade.com or call 1-(855) 326-4357 to update your contact information.

14. **No Warranties.** UNLESS SPECIFICALLY PROHIBITED BY APPLICABLE LAW, WE MAKE NO WARRANTIES WHATSOEVER, WHETHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. ADDITIONALLY, WE MAKE NO CLAIM OR GUARANTEE AS TO THE ACCURACY OF ANY INFORMATION PROVIDED OR SITE CONTENT. THIS WARRANTY DISCLAIMER IS NOT APPLICABLE TO RESIDENTS OF KANSAS OR WISCONSIN.

15. **Limitation of Liability.** IN NO EVENT SHALL WE BE LIABLE TO YOU OR ANY THIRD PARTY FOR ANY LOST PROFITS OR SPECIAL, EXEMPLARY, CONSEQUENTIAL OR PUNITIVE DAMAGES, EVEN IF INFORMED OF THE POSSIBILITY OF SUCH DAMAGES. FURTHERMORE, WE MAKE NO REPRESENTATION OR WARRANTY REGARDING THE EFFECT THAT THIS AGREEMENT MAY HAVE UPON YOUR FOREIGN, FEDERAL, STATE, OR LOCAL TAX LIABILITY.

16. **Choice of Law.** Unless expressly provided otherwise in this Agreement, this Agreement shall be governed by federal law and, to the extent not preempted by federal law, the laws of the State of Virginia without regard to any conflict of laws provision.

17. **Registration of Loan Owners.** If you receive a loan through the Site, you appoint Upgrade, Inc. as your authorized agent (in such capacity, the "Loan Registrar") to maintain a book-entry system

(the "Register") for recording the owner of the Loan and Promissory Note (the "Loan Owners"). The person or persons identified as the Loan Owners in the Register shall be deemed to be the owner(s) of the Loan and Promissory Note for purposes of receiving payment of principal and interest on such Loan and Promissory Note and for all other purposes. You acknowledge that the Loan Registrar maintains the only authoritative copy of the Loan and Promissory Note. With respect to any transfer by a Loan Owner of its beneficial interest in the Loan and Promissory Note, the right to payment of principal and interest on this Loan shall not be effective until the transfer is recorded in the Register.

18. **Miscellaneous.** If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable for any reason, such provision shall be changed and interpreted so as to best accomplish the objectives of the original provision to the fullest extent allowed by law and the remaining provisions of this Agreement shall remain in full force and effect. No failure or delay by either party in exercising any right, power, or remedy under this Agreement shall operate as a waiver of any such right, power, or remedy. Upgrade is not a party to this Agreement, but you agree that Upgrade is a third-party beneficiary and is entitled to rely on the provisions of this Agreement, including without limitation your representations, covenants, and agreements herein. The parties agree that there are no third-party beneficiaries other than Upgrade.

19. **State Law Notice and Disclosure:**

IOWA RESIDENTS: This Agreement shall be governed by Iowa law, except where otherwise preempted or authorized by 12 U.S.C. §85, including that interest and interest terms including origination fees, periodic interest, late fees, and returned check fees shall be governed by 12 U.S.C. §85 and the laws of Bank's home state.

**EXHIBIT A**

LOAN AGREEMENT AND PROMISSORY NOTE

Date: _____, ___ ("Effective Date")

Borrower Name and Address: _____

1. **PROMISE TO PAY.** The parties (each, a "Party" and collectively, "Parties") to this Loan Agreement and Promissory Note ("Note" or "Agreement") are the Borrower designated above ("Borrower," "you," or "your") and Blue Ridge Bank ("Bank"). For value received, you promise to pay to the order of Bank or any subsequent holder ("we," "us," or "Lender") of this Note, the principal loan amount of $XX.XX, together with interest, fees and charges as set forth below. You promise that you will use the Loan Amount for the purpose you indicated on the loan application to us (the "Application") and not for any post-secondary student loan, to buy or sell securities, or any illegal purposes.

2. **INTEREST AND PAYMENTS.**

a. Payment Timing and Application. Principal and interest shall be paid in _____ monthly installments of $_____ as discussed herein. Your first Monthly Payment will be due on _____. All other Monthly Payments will be due on the same day of each following month ("Subsequent Due Date") until _____, when all principal, interest and fees payable and owing under this Note are due. If your Subsequent Due Date is the 29th, 30th or 31st and the current month is shorter, your payment will be on the last day of the month. All payments or prepayments will be applied first to accrued interest, then to unpaid principal, then to our fees, then to costs and expenses payable to us under this Note, including any costs or expenses that we incur related to enforcement of this Note as further described in Section 5 ("Remedies") below.

b. Accrual. Interest on your loan will accrue and be calculated on a 365 day year basis for each full month and each partial month based on the Interest Rate disclosed below applied to the unpaid Loan Amount for the actual number of days your loan is outstanding for such full or partial month. Interest will start accruing on the Loan Amount on the first calendar day following the Effective Date and will continue to accrue until all amounts owed under this Note are paid in full. The Finance Charge and Total of Payments listed on the Truth in Lending Disclosures are estimates based upon the assumption that all Monthly Payments will be made on time. If Monthly Payments are made before or after the applicable due dates, the actual amount of Finance Charge and Total of Payments may be less or more than that what appears in the Truth in Lending Disclosure.

c. Interest Rate. This Loan bears interest during each calendar month beginning on the Effective Date until paid in full at a rate of XX.XX% per year.

d. Maturity. When your loan matures, you agree to pay in full any unpaid amounts payable under this Note. However, interest continues to accrue on the Loan Amount until you pay in full, even if your loan has matured.

e. Payment Method. Payment may be made by check or electronic funds transfer. Payment by check may be made by sending a personal check: (1) by standard US Mail to: Blue Ridge Bank c/o Upgrade, Inc., Dept. LA 24576, Pasadena, CA 91185-4576, or (2) by courier (FedEx, UPS, etc.) to: Blue Ridge Bank c/o Upgrade, Inc. 24576, 14005 Live Oak Ave., Irwindale, CA 91706-1300. We may change these addresses from time to time, and we will notify you of the new address for payments.

f. Electronic Check Conversion. If you present a check for payment, you authorize us: (1) to use the information from your check to make an electronic funds transfer from your account; or (2) to process the transaction as a check. Please note, if we elect to use your check for an electronic funds transfer, funds may be withdrawn from your account as soon as the same day your check is received and you may not receive the check back from your financial institution.

g. Prepayment. You may make additional payments to prepay your loan in whole or in part at any time without penalty. Prepayments will not change your Monthly Payment, or your obligation to make scheduled Monthly Payments on each Subsequent Payment Date but your final payment amount may be smaller than the payment amount shown in the Truth in Lending Disclosure or you may reduce the total number of Monthly Payments required to repay your loan as shown in the Truth in Lending Disclosure.

3. **FEES.** We will also charge you and you agree to pay the following fees to the extent permitted by applicable law.

a. Insufficient Funds/Returned Payment Fee. You will be charged a non-refundable fee of ten dollars ($10) for each failed electronic or check payment attempt. Your bank may assess its own fee in addition to the fee we assess.

b. Late Payment Fee. If a payment is more than fifteen (15) days late, we will charge you a nonrefundable late fee of ten dollars ($10.00).

c. Loan Origination Fee. We will deduct a loan origination fee in the amount shown in the Truth in Lending Disclosure from the Principal Amount of Loan as shown in the itemization of the Amount Financed contained in the Truth in Lending Disclosure.

d. Debit Card Fee. You are not required to make payments by use of a debit card. If the option is offered and you do use a debit card to make a payment of any kind, a third-party payment processor may charge you a service fee, which will be disclosed to you prior to your use of the service. Payment by debit card is optional and not a condition of obtaining a loan with us. Fees for this optional service are neither charged nor collected by Bank or Upgrade, Inc. ("Upgrade").

4. **DEFAULT.** Unless expressly provided otherwise in this Note, you will be in default under this Note if:

a. you fail to make any payment under this Note on the date such payment is due;

b. you fail to perform any of your obligations under this Note and you fail to cure such failure to perform to our reasonable satisfaction within thirty (30) days after receiving notice from us of your failure to perform;

c. any representation made by you in, or in connection with your Application or this Note is false in any material respect when made;

d. any of the following occurs (each a "Bankruptcy Event"): (1) you make an application for the appointment of a receiver, trustee or custodian or a receiver, trustee or custodian is appointed for you or a majority of

your assets; (2) you initiate or consent to any legal proceedings under the Bankruptcy Code, or equivalent law providing for the relief of debtors; (3) you make an assignment for the benefit of creditors; or (4) you have a petition in bankruptcy or similar relief of debtors filed against you, which is not withdrawn or discharged within thirty (30) days of being filing.

e. you die.

5. REMEDIES. Our remedies if you default on this Note include the following (to the fullest extent permitted by law):

a. General. In the event that you are in default under this Note, we may:

(1) declare our loan to you immediately due and payable, except that your loan will become immediately due and payable to us under a Bankruptcy Event, regardless of whether or not we take any action; and

(2) pursue any other remedies available to us under applicable law.

b. Loan Acceleration. If your loan is immediately due and payable, you must promptly pay in full the unpaid principal amount of the loan, all accrued interest, and any other amounts and fees payable under this Note.

c. Cost Reimbursement; Application of Proceeds. You agree to promptly reimburse us, with interest, for all costs and expenses incurred in exercising our remedies related to this Note, including reasonable attorneys' fees and the costs of collection after default, to the extent permitted by applicable law. Our rights under this Note are cumulative and we may exercise these rights at any time if you default.

In the event that we exercise any of our rights or remedies under this Note, you will continue to be in default until such time that you pay to us all amounts due to us and you have cured any and all defaults. Our failure to take any action or delay taking any action related to your default, does not waive, or imply a waiver of, any of our rights under this Note.

6. TERMINATION. This Note will terminate after you have paid in full all amounts payable by you under this Note. The terms of this Note that would, by their express nature, survive the termination of this Note (including the provisions under "Governing Law and Miscellaneous, Arbitration Agreement," "Notices and Other Information," "Limitation of Liability" and "Termination") will survive and be enforceable under this Note.

7. NOTICES AND OTHER INFORMATION. You consent to receive through electronic delivery, either via electronic mail at your registered email address or delivery to your online account, of all notices, records, disclosures and other information related to this Note ("Electronic Records") as further provided in the E-Sign Disclosure and Consent to Electronic Receipt of Loan Disclosures provided to you at the time of your Application. We may in our discretion deliver certain records to you in paper form to your last postal service mailing address of record. You must advise us immediately of any changes or updates to, inactivity of or operational problems with your registered email address. You agree that the federal Electronic Signatures in Global and National Commerce Act apply to this Note and our ability to conduct business with you by electronic means. All provisions of any Electronic Records are binding on you just as if they were delivered in paper to one of the addresses listed on the Truth In Lending Disclosure. As described when you provided your phone number in the Application, we may contact you at any phone number you provide. When you give us your mobile phone number, we have your consent to contact you at that number about your loan. Your consent allows us to use text messaging, automatic dialing technology and artificial or prerecorded voice messages for informational and loan service calls, but not for sales or telemarketing calls. It may include contact from companies working on our behalf to service your loan. Message and data rates may apply. You may contact us at any time to change these preferences.

8. WAIVERS. To the fullest extent permitted by applicable law, no extension of time for payment of any part of the amount due under this Note, and no alteration, amendment or waiver of any provision of this Note shall release, modify, amend, waive, extend, change, discharge, terminate or affect your unconditional liability, and that at any other person or party who may become liable for the payment of all or part of the amount due under this Note.

9. CREDIT REPORTS AND MONITORING. We may obtain credit reports on you on an ongoing basis until this Loan is paid in full. We may report information concerning your performance under this Note to credit reporting agencies. Late payments, missed payments or other defaults on this Note may be reflected in your credit report. If you believe we inaccurately reported information about you or this Note to a credit reporting agency, call (855) 997-3100, write to us at 275 Battery Street, 23rd Floor, San Francisco, CA 94111, Attention: Disputes Department, or send an email to us at creditreporting@upgrade.com. You will need to provide the date of your loan along with copy of your credit bureau report reflecting the information that you believe is inaccurate.

10. ASSIGNMENT. You may not assign or transfer your rights or obligations under this Note without our prior written consent. We may assign or transfer all or a portion of this Note and the related documents to a third party or an affiliate. Our rights under this Note shall inure to the benefit of our successors and assigns and your obligations under this Note shall be binding upon your heirs, personal representatives and permitted assigns.

11. LIMITATION OF LIABILITY. OUR LIABILITY TO YOU UNDER THIS NOTE, IF ANY, SHALL BE LIMITED TO DIRECT, ACTUAL DAMAGES ONLY. YOU AGREE THAT IN NO EVENT SHALL WE BE LIABLE TO YOU FOR CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL OR INDIRECT DAMAGES.

12. GOVERNING LAW AND MISCELLANEOUS.

Unless expressly provided otherwise in this Note, federal law and the laws of the state of Virginia, as applicable, govern this Note. If any provision of this Note cannot be enforced, the rest of the provisions of this Note will stay in effect. No amendment of this Note will be valid unless in writing and signed by both us and you. This Note represents the entire agreement between you and us regarding your loan.

13. ARBITRATION AGREEMENT.

PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS. YOU HAVE THE RIGHT TO OPT OUT OF THIS ARBITRATION AGREEMENT AS DESCRIBED BELOW.

a. The parties to this Agreement agree that either you or Bank or its service provider Upgrade (or any subsequent assigns of the foregoing), may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section (the "Arbitration Provision"), unless you opt out as provided in paragraph (b) below. As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and Bank or Upgrade and/or any assign of Bank or Upgrade (or persons claiming through or connected with Bank or Upgrade and/or any assign of Bank or Upgrade), on the other hand, relating to or arising out of this Agreement and/or the activities or relationships that involve, lead to, or result from this Agreement, including (except to the extent provided otherwise in the last sentence of paragraph (f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

b. You may opt out of this Arbitration Provision for all purposes by sending an arbitration opt-out notice to Blue Ridge Bank, c/o Upgrade, Inc., 275 Battery Street, 23rd Floor, San Francisco, CA 94111. Attention: Legal Department, only if received at the specified address within 30 days of the date of your electronic acceptance of the terms of this Agreement. The opt-out notice must clearly state that you are rejecting arbitration; identify the agreement to which it applies by date; provide your name, address, and social security number; and be signed by you. You may send the opt-out notice in any manner you see fit as long as it is received at the specified address within the specified time. No other methods can be used to opt-out of this Arbitration Provision. If the opt-out notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the opt-out notice on your behalf.

c. The party initiating arbitration shall do so with the American Arbitration Association (the "AAA") or JAMS. The arbitration shall be conducted according to, and the location of the arbitration shall be determined in accordance with, the rules and policies of the administrator selected, except to the extent the rules conflict with this Arbitration Provision or any countervailing law. In the case of a conflict between the rules and policies of the administrator and this Arbitration Provision, this Arbitration Provision shall control, subject to countervailing law, unless all parties to the arbitration consent to have the rules and policies of the administrator apply.

d. If Bank or Upgrade (or any assign of Bank or Upgrade) elects arbitration, Bank or Upgrade (or the assign, as the case may be) shall pay all the administrator's filing costs and administrative fees (other than hearing fees). If you elect arbitration, filing costs and administrative fees (other than hearing fees) shall be paid in accordance with the rules of the administrator selected, or in accordance with countervailing law if contrary to the administrator's rules. Bank or Upgrade (or the assign, as the case may be) shall pay the administrator's hearing fees for one full day of arbitration hearings. Fees for hearings that exceed one day will be paid by the party requesting the hearing, unless the administrator's rules or applicable law require otherwise, or you request that Bank or Upgrade (or the assign) pay them and Bank or Upgrade agrees (or the assign agrees) to do so. Each party to the arbitration shall bear the expense of its own attorneys' fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary herein.

e. Within 30 days of a final award by the arbitrator, any party to the arbitration may appeal the award for reconsideration by a three-arbitrator panel selected according to the rules of the arbitrator administrator. In the event of such an appeal, any opposing party may cross-appeal within 30 days after notice of the appeal. The panel will reconsider de novo all aspects of the initial award that are appealed. Costs and conduct of any appeal shall be governed by this Arbitration Provision and the administrator's rules, in the same way as the initial arbitration proceeding. Any award by the individual arbitrator that is not subject to appeal, and any panel award on appeal, shall be final and binding, except for any appeal right under the Federal Arbitration Act (the "FAA"), and may be entered as a judgment in any court of competent jurisdiction.

f. We agree not to invoke our right to arbitrate an individual Claim you may bring in Small Claims Court or an equivalent court, if any, so long as the Claim is pending only in that court. NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS PRIVATE ATTORNEY GENERAL ON BEHALF OF OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF THE ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN A COURT AS CLASS REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A COURT. Unless consented to in writing by all parties to the arbitration, no party to the arbitration may join, consolidate, or otherwise bring claims for or on behalf of two or more individuals or unrelated corporate entities in the same arbitration unless those persons are parties to a single transaction. Unless consented to in writing by all parties to the arbitration, an award in arbitration shall determine the rights and obligations of the named parties only, and only with respect to the claims in arbitration, and shall not (i) determine the rights, obligations, or interests of anyone other than a named party, or resolve any Claim of anyone other than a named party; nor (ii) make an award for the benefit of, or against, anyone other than a named party. No administrator or arbitrator shall have the power or authority to waive, modify, or fail to enforce this paragraph (f) and any attempt to do so, whether by rule, policy, arbitration decision or otherwise, shall be invalid and unenforceable. Any challenge to the validity of this paragraph (f) shall be determined exclusively by a court and not by the administrator or any arbitrator.

g. This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the FAA. The arbitrator will apply substantive law

consistent with the FAA and applicable statutes of limitations. The arbitrator may award damages or other types of relief permitted by applicable substantive law, subject to the limitations set forth in this Arbitration Provision. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court. The arbitrator shall take steps to reasonably protect confidential information.

h. This Arbitration Provision shall survive (i) suspension, termination, revocation, closure, or amendments to this Agreement and the relationship of the parties and/or assignee; (ii) the bankruptcy or insolvency of any party or other person; and (iii) any transfer of any loan or this Agreement to any other person or entity. If any portion of this Arbitration Provision is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. If an arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in paragraph (f) are finally adjudicated pursuant to the last sentence of paragraph (f) to be unenforceable, then no arbitration shall be had. In no event shall any invalidation be deemed to authorize an arbitrator to determine Claims or make awards beyond those authorized in this Arbitration Provision. THE PARTIES ACKNOWLEDGE THAT THEY MAY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF ANY PARTY ELECTS ARBITRATION PURSUANT TO THIS ARBITRATION PROVISION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY ANY PARTY.

i. EXCEPTION: Active duty military servicemembers and their dependents are exempt from arbitration to the extent provided for in the Military Lending Act.

14. REGISTRATION OF LOAN OWNERS. You appoint Upgrade, Inc. as your authorized agent (in such capacity, the "Loan Registrar") to maintain a book-entry system (the "Register") for recording the owner of this Loan (the "Loan Owners"). The person or persons identified as the Loan Owners in the Register shall be deemed to be the owner(s) of this Loan for purposes of receiving payment of principal and interest on such Loan and for all other purposes. You acknowledge that the Loan Registrar maintains the only authoritative copy of this Loan. With respect to any transfer by a Loan Owner of its beneficial interest in this Loan, the right to payment of principal and interest on this Loan shall not be effective until the transfer is recorded in the Register.

15. MILITARY LENDING ACT DISCLOSURE. Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: the costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fees charged (other than certain participation fees for a credit card account).

(1) To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, Covered Borrowers may call the following toll-free phone number: (855) 511-7676.

(2) A "Covered Borrower" is a consumer who, at the time of Application, qualified as a are a "covered borrower" under the Military Lending Act, as defined in at 32 CFR § 232.3(g). Notwithstanding any other provision of this Agreement, if you are a "Covered Borrower", then nothing in this Agreement shall be construed as applying to you to the extent inconsistent with the Military Lending Act, including without limitation any interest, fees, or limitations on your rights that would not be consistent with the Military Lending Act. Without limiting the forgoing, if you are a "Covered Borrower", then Section 11 (Limitation of Liability) and Section 13 (Arbitration Agreement) do not apply to you.

16. ELECTRONIC TRANSACTIONS. THIS NOTE INCLUDES YOUR EXPRESS CONSENT TO ELECTRONIC TRANSACTIONS AND DISCLOSURES, WHICH CONSENT IS SET FORTH IN THE SEPARATE DOCUMENT TITLED, "ESIGN ACT CONSENT," THE TERMS OF WHICH ARE EXPRESSLY INCORPORATED HEREIN IN THEIR ENTIRETY.

17. STATE LAW NOTICES AND DISCLOSURES

ALABAMA RESIDENTS: CAUTION — IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

CALIFORNIA RESIDENTS: A married applicant may apply for a separate account. If Lender takes any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, Borrower has the right to obtain within 60 days a free copy of Borrower's consumer credit report from the consumer reporting agency who furnished the consumer credit report and from any other consumer credit reporting agency that compiles and maintains files on consumers on a nationwide basis.

CALIFORNIA and NEW YORK RESIDENTS: We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be included your credit report.

CALIFORNIA and UTAH RESIDENTS: You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

FLORIDA RESIDENTS: Florida documentary stamp tax required by law has been paid or will be paid directly to the Department of Revenue.

IOWA RESIDENTS: This is a Consumer Credit Transaction. Notwithstanding anything to the contrary in this Note:

- Default: You will be in default under this Note if, after giving you notice, as required by law, regarding your failure to perform and any right to cure:
  - you fail to cure such failure to perform to our reasonable satisfaction within twenty (20) days after receiving notice from us of your failure to perform;
  - you fail to make any payment under this Note within ten (10) days of the date such payment is due; or
  - you fail to observe any other requirement of this Note, breach of which materially impairs the condition, value or protection of or our right in any collateral securing the transaction, or materially impairs your prospect to pay amounts due.
- Cost Reimbursement; Application of Proceeds. You agree to promptly reimburse us, with interest, for all costs and expenses incurred in exercising our remedies related to this Note (excluding reasonable attorneys' fees) and the costs of collection after default, to the extent permitted by applicable law. Our rights under this Note are cumulative and we may exercise these rights at any time if you default.
- Governing Law and Miscellaneous: This Note shall be governed by Iowa law, except where otherwise preempted or authorized by 12 U.S.C. §85, including that interest and interest terms including origination fees, periodic interest, late fees, and returned check fees shall be governed by 12 U.S.C. §85 and the laws of Bank's home state. If any provision of this Note cannot be enforced, the rest of the provisions of this Note will stay in effect. No amendment of this Note will be valid unless in writing and signed by both us and you. This Note represents the entire agreement between you and us regarding your loan.

IMPORTANT: READ BEFORE SIGNING. The terms of this agreement should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this written contract may be legally enforced. You may change the terms of this agreement only by another written agreement.
NOTICE TO CONSUMER:
1. Do not sign this paper before you read it.
2. You are entitled to a copy of this paper.
3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.

KANSAS RESIDENTS: NOTICE TO CONSUMER: 1. Do not sign this agreement before you read it. 2. You are entitled to a copy of this agreement. 3. You may prepay the unpaid balance at any time without penalty.

MAINE, NEW YORK and VERMONT RESIDENTS: A consumer credit report may be requested in connection with your application or in connection with updates, renewals or extensions of any credit granted as a result of your application. Upon your request, you will be informed whether or not such a report was requested and, if so, the name and address of the agency that furnished the report.

MASSACHUSETTS RESIDENTS: Massachusetts law prohibits discrimination based upon marital status or sexual orientation.

MISSOURI AND NEBRASKA RESIDENTS: YOU MAY PREPAY YOUR LOAN IN WHOLE OR IN PART AT ANY TIME. ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER) AND US (LENDER) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

NEW HAMPSHIRE RESIDENTS: If we refer this Agreement to an attorney for collection, you agree to pay our reasonable attorneys' fees. However, if you prevail in (1) any action, suit, or proceeding we bring, or (2) an action brought by you in connection with this Agreement, or (3) if you successfully assert a partial defense or setoff, recoupment, or counterclaim to an action brought by us, the court may withhold from us the entire amount or such portion of the attorneys' fees as the court considers equitable.

NEW JERSEY: The section headings of the Agreement are a table of contents and not contract terms. Portions of this Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

OHIO RESIDENTS: Ohio anti-discrimination laws require creditors to make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on individuals upon request. The Ohio Civil Rights Commission administers these laws.

SOUTH DAKOTA RESIDENTS: Any improprieties in making the loan or in loan practices may be referred to: South Dakota Division of Banking, 1601 N. Harrison Ave, Suite 1. Pierre, SD 57501.

TEXAS RESIDENTS: You agree to give up (waive) your common law rights to receive notice of intent to accelerate and notice of acceleration. This means that you give up the right to receive notice that we intend to demand that you pay all that you owe on this Note at once (accelerate) and notice that we have accelerated. This written loan agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

UTAH RESIDENTS: This Agreement is the final expression of the agreement between you and us and it may not be contradicted by evidence of an alleged oral agreement.

WISCONSIN RESIDENTS: NOTICE TO CUSTOMER: (A) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT, EVEN IF OTHERWISE ADVISED; (B) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES; (C) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN; AND (D) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE OF THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

MARRIED WISCONSIN RESIDENTS: No provision of any marital agreement, unilateral statement or court order applying to marital property will adversely affect a creditor's interest unless prior to the time credit is granted, the creditor is furnished with a copy of the agreement, statement or court order, or has actual knowledge of the provision. If you are married, by signing this Loan Agreement, you are confirming that this loan obligation is being incurred in the interest of your marriage and your family. If the loan for which you are applying is granted, you will notify the Lender if you have a spouse who needs to receive notification that credit has been extended to you.

GENERAL NOTICE TO CUSTOMER:
(a) DO NOT SIGN THIS BEFORE YOU READ THE ENTIRE AGREEMENT, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND THE FINANCE CHARGE DISCLOSED MAY BE LESS.

NAME OF BORROWER (AND CO-BORROWER IF ANY)

BORROWER'S UPGRADE ACCOUNT NUMBER

BY: UPGRADE, INC.

ATTORNEY-IN-FACT FOR BORROWER AND CO-BORROWER (if any)

(Signed Electronically)



Original Document hash: xmK6TxvLt2WaraUb8cjYZ4Mtgcg4VfhgK5mvppHwf8s=



**LOAN AGREEMENT AND PROMISSORY NOTE**

**DATE: September 20, 2021 ("Effective Date")**

**Borrower Name and Address:**

TYESHA JACKSON WISE, 815 N LA BREA AV 83 INGLEWOOD, California 90302

**1. PROMISE TO PAY.** The parties (each, a "Party" and collectively, "Parties") to this Loan Agreement and Promissory Note ("Note" or "Agreement") are the Borrower designated above ("Borrower," "you," or "your") and Blue Ridge Bank ("Bank"). For value received, you promise to pay to the order of Bank or any subsequent holder ("we," "us," or "Lender") of this Note, the principal loan amount of $1,000.00, together with interest, fees and charges as set forth below. You promise that you will use the Loan Amount for the purpose you indicated on the loan application to us (the "Application") and not for any post-secondary student loan, to buy or sell securities, or any illegal purposes.

**2. INTEREST AND PAYMENTS.**

a. Payment Timing and Application. Principal and interest shall be paid in 36 monthly installments of $42.06 as discussed herein. Your first Monthly Payment will be due on 10/20/2021. All other Monthly Payments will be due on the same day of each following month ("Subsequent Due Date") until 09/20/2024, when all principal, interest and fees payable and owing under this Note are due. If your Subsequent Due Date is the 29th, 30th or 31st and the current month is shorter, your payment will be on the last day of the month. All payments or prepayments will be applied first to accrued interest, then to unpaid principal, then to our fees, then to costs and expenses payable to us under this Note, including any costs or expenses that we incur related to enforcement of this Note as further described in Section 5 ("Remedies") below.

b. Accrual. Interest on your loan will accrue and be calculated on a 365 day year basis for each full month and each partial month based on the Interest Rate disclosed below applied to the unpaid Loan Amount for the actual number of days your loan is outstanding for such full or partial month. Interest will start accruing on the Loan Amount on the first calendar day following the Effective Date and will continue to accrue until all amounts owed under this Note are paid in full. The Finance Charge and Total of Payments listed on the Truth in Lending Disclosures are estimates based upon the assumption that all Monthly Payments will be made on time. If Monthly Payments are made before or after the applicable due dates, the actual amount of Finance Charge and Total of Payments may be less or more than that what appears in the Truth in Lending Disclosure.

c. Interest Rate. This Loan bears interest during each calendar month beginning on the Effective Date until paid in full at a rate of 29.29% per year.

d. Maturity. When your loan matures, you agree to pay in full any unpaid amounts payable under this Note. However, interest continues to accrue on the Loan Amount until you pay in full, even if your loan has matured.

e. Payment Method. Payment may be made by check or electronic funds transfer. Payment by check may be made by sending a personal check: (1) by standard US Mail to: Blue Ridge Bank c/o Upgrade, Inc., Dept. LA 24576, Pasadena, CA 91185-4576, or (2) by courier (FedEx, UPS, etc.) to: Blue Ridge Bank c/o Upgrade, Inc. 24576, 14005 Live Oak Ave., Irwindale, CA 91706-1300. We may change these addresses from time to time, and we will notify you of the new address for payments.

f. Electronic Check Conversion. If you present a check for payment, you authorize us: (1) to use the information from your check to make an electronic funds transfer from your account; or (2) to process the transaction as a check. Please note, if we elect to use your check for an electronic funds transfer, funds may be withdrawn from your account as soon as the same day your check is received and you may not receive the check back from your financial institution.

g. Prepayment. You may make additional payments to prepay your loan in whole or in part at any time without penalty. Prepayments will not change your Monthly Payment, or your obligation to make scheduled Monthly Payments on each Subsequent Payment Date but your final payment amount may be smaller than the payment amount shown in the Truth in Lending Disclosure or you may reduce the total number of Monthly Payments required to repay your loan as shown in the Truth in Lending Disclosure.

**3. FEES.** We will also charge you and you agree to pay the following fees to the extent permitted by applicable law.

a. Insufficient Funds/Returned Payment Fee. You will be charged a non-refundable fee of ten dollars ($10) for each failed electronic or check payment attempt. Your bank may assess its own fee in addition to the fee we assess.

b. Late Payment Fee. If a payment is more than fifteen (15) days late, we will charge you a nonrefundable late fee of ten dollars ($10.00).

c. Loan Origination Fee. We will deduct a loan origination fee in the amount shown in the Truth in Lending Disclosure from the Principal Amount of Loan as shown in the Itemization of the Amount Financed contained in the Truth in Lending Disclosure.

d. Debit Card Fee. You are not required to make payments by use of a debit card. If the option is offered and you do use a debit card to make a payment of any kind, a third-party payment processor may charge you a service fee, which will be disclosed to you prior to your use of the service. Payment by debit card is optional and not a condition of obtaining a loan with us. Fees for this optional service are neither charged nor collected by Bank or Upgrade, Inc. ("Upgrade").

**4. DEFAULT.** Unless expressly provided otherwise in this Note, you will be in default under this Note if:

a. you fail to make any payment under this Note on the date such payment is due;

b. you fail to perform any of your obligations under this Note and you fail to cure such failure to perform to our reasonable satisfaction within thirty (30) days after receiving notice from us of your failure to perform;

c. any representation made by you in, or in connection with your Application or this Note is false in any material respect when made;

d. any of the following occurs (each a "Bankruptcy Event"): (1) you make an application for the appointment of a receiver, trustee or custodian or a receiver, trustee or custodian is appointed for you or a majority of your assets; (2) you initiate or consent to any legal proceedings under the Bankruptcy Code, or equivalent law providing for the relief of debtors; (3) you make an assignment for the benefit of creditors; or (4) you have a petition in bankruptcy or similar relief of debtors filed against you, which is not withdrawn or discharged within thirty (30) days of being filing.

e. you die.

**5. REMEDIES.** Our remedies if you default on this Note include the following (to the fullest extent permitted by law):

a. General. In the event that you are in default under this Note, we may:

(1) declare our loan to you immediately due and payable, except that your loan will become immediately due and payable to us under a Bankruptcy Event, regardless of whether or not we take any action; and

(2) pursue any other remedies available to us under applicable law.

b. Loan Acceleration. If your loan is immediately due and payable, you must promptly pay in full the unpaid principal amount of the loan, all accrued interest, and any other amounts and fees payable under this Note.

c. Cost Reimbursement; Application of Proceeds. You agree to promptly reimburse us, with interest, for all costs and expenses incurred in exercising our remedies related to this Note, including reasonable attorneys' fees and the costs of collection after default, to the extent permitted by applicable law. Our rights under this Note are cumulative and we may exercise these rights at any time if you default.

In the event that we exercise any of our rights or remedies under this Note, you will continue to be in default until such time that you pay to us all amounts due to us and you have cured any and all defaults. Our failure to take any action or delay taking any action related to your default, does not waive, or imply a waiver of, any of our rights under this Note.

**6. TERMINATION.** This Note will terminate after you have paid in full all amounts payable by you under this Note. The terms of this Note that would, by their express nature, survive the termination of this Note (including the provisions under "Governing Law and Miscellaneous, Arbitration Agreement," "Notices and Other Information," "Limitation of Liability" and "Termination") will survive and be enforceable under this Note.

**7. NOTICES AND OTHER INFORMATION.** You consent to receive through electronic delivery, either via electronic mail at your registered email address or delivery to your online account, of all notices, records, disclosures and other information related to this Note ("Electronic Records") as further provided in the E-Sign Disclosure and Consent to Electronic Receipt of Loan Disclosures provided to you at the time of your Application. We may in our discretion deliver certain records to you in paper form to your last postal service mailing address of record. You must advise us immediately of any changes or updates to, inactivity of or operational problems with your registered email address. You agree that the federal Electronic Signatures in Global and National Commerce Act apply to this Note and our ability to conduct business with you by electronic means. All provisions of any Electronic Records are binding on you just as if they were delivered in paper to one of the addresses listed on the Truth in Lending Disclosure. As described when you provided your phone number in the Application, we may contact you at any phone number you provide. When you give us your mobile phone number, we have your consent to contact you at that number about your loan. Your consent allows us to use text messaging, automatic dialing technology and artificial or prerecorded voice messages for informational and loan service calls, but not for sales or telemarketing calls. It may include contact from companies working on our behalf to service your loan. Message and data rates may apply. You may contact us at any time to change these preferences.

**8. WAIVERS.** To the fullest extent permitted by applicable law, no extension of time for payment of any part of the amount due under this Note, and no alteration, amendment or waiver of any provision of this Note shall release, modify, amend, waive, extend, change, discharge, terminate or affect your unconditional liability, and that at any other person or party who may become liable for the payment of all or part of the amount due under this Note.

**9. CREDIT REPORTS AND MONITORING.** We may obtain credit reports on you on an ongoing basis until this Loan is paid in full. We may report information concerning your performance under this Note to credit reporting agencies. Late payments, missed payments or other defaults on this Note may be reflected in your credit report. If you believe we inaccurately reported information about you or this Note to a credit reporting agency, call (855) 997-3100, write to us at 275 Battery Street, 23rd Floor, San Francisco, CA 94111, Attention: Disputes Department, or send an email to us at creditreporting@upgrade.com. You will need to provide the date of your loan along with copy of your credit bureau report reflecting the information that you believe is inaccurate.

**10. ASSIGNMENT.** You may not assign or transfer your rights or obligations under this Note without our prior

written consent. We may assign or transfer all or a portion of this Note and the related documents to a third party or an affiliate. Our rights under this Note shall inure to the benefit of our successors and assigns and your obligations under this Note shall be binding upon your heirs, personal representatives and permitted assigns.

**11. LIMITATION OF LIABILITY.** OUR LIABILITY TO YOU UNDER THIS NOTE, IF ANY, SHALL BE LIMITED TO DIRECT, ACTUAL DAMAGES ONLY. YOU AGREE THAT IN NO EVENT SHALL WE BE LIABLE TO YOU FOR CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL OR INDIRECT DAMAGES.

**12. GOVERNING LAW AND MISCELLANEOUS.**

Unless expressly provided otherwise in this Note, federal law and the laws of the state of Virginia, as applicable, govern this Note. If any provision of this Note cannot be enforced, the rest of the provisions of this Note will stay in effect. No amendment of this Note will be valid unless in writing and signed by both us and you. This Note represents the entire agreement between you and us regarding your loan.

**13. ARBITRATION AGREEMENT.**

**PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS. YOU HAVE THE RIGHT TO OPT OUT OF THIS ARBITRATION AGREEMENT AS DESCRIBED BELOW.**

a. The parties to this Agreement agree that either you or Bank or its service provider Upgrade (or any subsequent assigns of the foregoing), may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section (the "Arbitration Provision"), unless you opt out as provided in paragraph (b) below. As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and Bank or Upgrade and/or any assign of Bank or Upgrade (or persons claiming through or connected with Bank or Upgrade and/or any assign of Bank or Upgrade), on the other hand, relating to or arising out of this Agreement and/or the activities or relationships that involve, lead to, or result from this Agreement, including (except to the extent provided otherwise in the last sentence of paragraph (f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

b. You may opt out of this Arbitration Provision for all purposes by sending an arbitration opt-out notice to Blue Ridge Bank, c/o Upgrade, Inc., 275 Battery Street, 23rd Floor, San Francisco, CA 94111, Attention: Legal Department, only if received at the specified address within 30 days of the date of your electronic acceptance of the terms of this Agreement. The opt-out notice must clearly state that you are rejecting arbitration; identify the agreement to which it applies by date; provide your name, address, and social security number; and be signed by you. You may send the opt-out notice in any manner you see fit as long as it is received at the specified address within the specified time. No other methods can be used to opt-out of this Arbitration Provision. If the opt-out notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the opt-out notice on your behalf.

c. The party initiating arbitration shall do so with the American Arbitration Association (the "AAA") or JAMS. The arbitration shall be conducted according to, and the location of the arbitration shall be determined in accordance with, the rules and policies of the administrator selected, except to the extent the rules conflict with this Arbitration Provision or any countervailing law. In the case of a conflict between the rules and policies of the administrator and this Arbitration Provision, this Arbitration Provision shall control, subject to countervailing law, unless all parties to the arbitration consent to have the rules and policies of the administrator apply.

d. If Bank or Upgrade (or any assign of Bank or Upgrade) elects arbitration, Bank or Upgrade (or the assign, as the case may be) shall pay all the administrator's filing costs and administrative fees (other than hearing fees). If you elect arbitration, filing costs and administrative fees (other than hearing fees) shall be paid in accordance with the rules of the administrator selected, or in accordance with countervailing law if contrary to the administrator's rules. Bank or Upgrade (or the assign, as the case may be) shall pay the administrator's hearing fees for one full day of arbitration hearings. Fees for hearings that exceed one day will be paid by the party requesting the hearing, unless the administrator's rules or applicable law require otherwise, or you request that Bank or Upgrade (or the assign) pay them and Bank or Upgrade agrees (or the assign agrees) to do so. Each party to the arbitration shall bear the expense of its own attorneys' fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary herein.

e. Within 30 days of a final award by the arbitrator, any party to the arbitration may appeal the award for reconsideration by a three-arbitrator panel selected according to the rules of the arbitrator administrator. In the event of such an appeal, any opposing party may cross-appeal within 30 days after notice of the appeal. The panel will reconsider de novo all aspects of the initial award that are appealed. Costs and conduct of any appeal shall be governed by this Arbitration Provision and the administrator's rules, in the same way as the initial arbitration proceeding. Any award by the individual arbitrator that is not subject to appeal, and any panel award on appeal, shall be final and binding, except for any appeal right under the Federal Arbitration Act (the "FAA"), and may be entered as a judgment in any court of competent jurisdiction.

f. We agree not to invoke our right to arbitrate an individual Claim you may bring in Small Claims Court or an equivalent court, if any, so long as the Claim is pending only in that court. NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS PRIVATE ATTORNEY GENERAL ON BEHALF OF OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF THE

---

*Handwritten margin notes:*

9/12/2022
Stephanie
Hailey
Wabe
documents@upgrade.com
Upgrade Inc
Lockbox #52210
P.O. Box 52210
Phoenix, AZ
85072

Upgrade
Suite 2300
275 Battery St.
San Francisco CA
94111

fin. Arbitration

ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN A COURT AS CLASS REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A COURT. Unless consented to in writing by all parties to the arbitration, no party to the arbitration may join, consolidate, or otherwise bring claims for or on behalf of two or more individuals or unrelated corporate entities in the same arbitration unless those persons are parties to a single transaction. Unless consented to in writing by all parties to the arbitration, an award in arbitration shall determine the rights and obligations of the named parties only, and only with respect to the claims in arbitration, and shall not (i) determine the rights, obligations, or interests of anyone other than a named party, or resolve any Claim of anyone other than a named party; nor (ii) make an award for the benefit of, or against, anyone other than a named party. No administrator or arbitrator shall have the power or authority to waive, modify, or fail to enforce this paragraph (f) and any attempt to do so, whether by rule, policy, arbitration decision or otherwise, shall be invalid and unenforceable. Any challenge to the validity of this paragraph (f) shall be determined exclusively by a court and not by the administrator or any arbitrator.

g. This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the FAA. The arbitrator will apply substantive law consistent with the FAA and applicable statutes of limitations. The arbitrator may award damages or other types of relief permitted by applicable substantive law, subject to the limitations set forth in this Arbitration Provision. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court. The arbitrator shall take steps to reasonably protect confidential information.

h. This Arbitration Provision shall survive (i) suspension, termination, revocation, closure, or amendments to this Agreement and the relationship of the parties and/or assignee; (ii) the bankruptcy or insolvency of any party or other person; and (iii) any transfer of any loan or this Agreement to any other person or entity. If any portion of this Arbitration Provision is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. If an arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in paragraph (f) are finally adjudicated pursuant to the last sentence of paragraph (f) to be unenforceable, then no arbitration shall be had. In no event shall any invalidation be deemed to authorize an arbitrator to determine Claims or make awards beyond those authorized in this Arbitration Provision. THE PARTIES ACKNOWLEDGE THAT THEY MAY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF ANY PARTY ELECTS ARBITRATION PURSUANT TO THIS ARBITRATION PROVISION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY ANY PARTY.

i. EXCEPTION: Active duty military servicemembers and their dependents are exempt from arbitration to the extent provided for in the Military Lending Act.

**14. REGISTRATION OF LOAN OWNERS.** You appoint Upgrade, Inc. as your authorized agent (in such capacity, the "Loan Registrar") to maintain a book-entry system (the "Register") for recording the owner of this Loan (the "Loan Owners"). The person or persons identified as the Loan Owners in the Register shall be deemed to be the owner(s) of this Loan for purposes of receiving payment of principal and interest on such Loan and for all other purposes. You acknowledge that the Loan Registrar maintains the only authoritative copy of this Loan. With respect to any transfer by a Loan Owner of its beneficial interest in this Loan, the right to payment of principal and interest on this Loan shall not be effective until the transfer is recorded in the Register.

**15. MILITARY LENDING ACT DISCLOSURE.** Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: the costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fees charged (other than certain participation fees for a credit card account).

(1) To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, Covered Borrowers may call the following toll-free phone number: (855) 511-7676.

(2) A "Covered Borrower" is a consumer who, at the time of Application, qualified as a are a "covered borrower" under the Military Lending Act, as defined in at 32 CFR § 232.3(g). Notwithstanding any other provision of this Agreement, if you are a "Covered Borrower", then nothing in this Agreement shall be construed as applying to you to the extent inconsistent with the Military Lending Act, including without limitation any interest, fees, or limitations on your rights that would not be consistent with the Military Lending Act. Without limiting the forgoing, if you are a "Covered Borrower", then Section 11 (Limitation of Liability) and Section 13 (Arbitration Agreement) do not apply to you.

**16. ELECTRONIC TRANSACTIONS.** THIS NOTE INCLUDES YOUR EXPRESS CONSENT TO ELECTRONIC TRANSACTIONS AND DISCLOSURES, WHICH CONSENT IS SET FORTH IN THE SEPARATE DOCUMENT TITLED, "ESIGN ACT CONSENT," THE TERMS OF WHICH ARE EXPRESSLY INCORPORATED HEREIN IN THEIR ENTIRETY.

**17. STATE LAW NOTICES AND DISCLOSURES**

ALABAMA RESIDENTS: CAUTION — IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

CALIFORNIA RESIDENTS: A married applicant may apply for a separate account. If Lender takes any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, Borrower has the right to obtain within 60 days a free copy of Borrower's consumer credit report from the consumer reporting agency who furnished the consumer credit report and from any other consumer credit reporting agency that complies and maintains files

on consumers on a nationwide basis.

CALIFORNIA and NEW YORK RESIDENTS: We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be included your credit report.

CALIFORNIA and UTAH RESIDENTS: You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

FLORIDA RESIDENTS: Florida documentary stamp tax required by law has been paid or will be paid directly to the Department of Revenue.

IOWA RESIDENTS: This is a Consumer Credit Transaction. Notwithstanding anything to the contrary in this Note:

- Default: You will be in default under this Note if, after giving you notice, as required by law, regarding your failure to perform and any right to cure:
    - you fail to cure such failure to perform to our reasonable satisfaction within twenty (20) days after receiving notice from us of your failure to perform;
    - you fail to make any payment under this Note within ten (10) days of the date such payment is due; or
    - you fail to observe any other requirement of this Note, breach of which materially impairs the condition, value or protection of or our right in any collateral securing the transaction, or materially impairs your prospect to pay amounts due.
- Cost Reimbursement; Application of Proceeds. You agree to promptly reimburse us, with interest, for all costs and expenses incurred in exercising our remedies related to this Note (excluding reasonable attorneys' fees) and the costs of collection after default, to the extent permitted by applicable law. Our rights under this Note are cumulative and we may exercise these rights at any time if you default.
- Governing Law and Miscellaneous: This Note shall be governed by Iowa law, except where otherwise preempted or authorized by 12 U.S.C. §85, including that interest and interest terms including origination fees, periodic interest, late fees, and returned check fees shall be governed by 12 U.S.C. §85 and the laws of Bank's home state. If any provision of this Note cannot be enforced, the rest of the provisions of this Note will stay in effect. No amendment of this Note will be valid unless in writing and signed by both us and you. This Note represents the entire agreement between you and us regarding your loan.

IMPORTANT: READ BEFORE SIGNING. The terms of this agreement should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this written contract may be legally enforced. You may change the terms of this agreement only by another written agreement.
NOTICE TO CONSUMER:
1. Do not sign this paper before you read it.
2. You are entitled to a copy of this paper.
3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.

KANSAS RESIDENTS: NOTICE TO CONSUMER: 1. Do not sign this agreement before you read it. 2. You are entitled to a copy of this agreement. 3. You may prepay the unpaid balance at any time without penalty.

MAINE, NEW YORK and VERMONT RESIDENTS: A consumer credit report may be requested in connection with your application or in connection with updates, renewals or extensions of any credit granted as a result of your application. Upon your request, you will be informed whether or not such a report was requested and, if so, the name and address of the agency that furnished the report.

MASSACHUSETTS RESIDENTS: Massachusetts law prohibits discrimination based upon marital status or sexual orientation.

MISSOURI AND NEBRASKA RESIDENTS: YOU MAY PREPAY YOUR LOAN IN WHOLE OR IN PART AT ANY TIME. ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER) AND US (LENDER) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

NEW HAMPSHIRE RESIDENTS: If we refer this Agreement to an attorney for collection, you agree to pay our reasonable attorneys' fees. However, if you prevail in (1) any action, suit, or proceeding we bring, or (2) an action brought by you in connection with this Agreement, or (3) if you successfully assert a partial defense or setoff, recoupment, or counterclaim to an action brought by us, the court may withhold from us the entire amount or such portion of the attorneys' fees as the court considers equitable.

NEW JERSEY: The section headings of the Agreement are a table of contents and not contract terms. Portions of this Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

OHIO RESIDENTS: Ohio anti-discrimination laws require creditors to make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on individuals upon request. The Ohio Civil Rights Commission administers these laws.

SOUTH DAKOTA RESIDENTS: Any improprieties in making the loan or in loan practices may be referred to: South Dakota Division of Banking, 1601 N. Harrison Ave, Suite 1, Pierre, SD 57501.

TEXAS RESIDENTS: You agree to give up (waive) your common law rights to receive notice of intent to accelerate and notice of acceleration. This means that you give up the right to receive notice that we intend to demand that you pay all that you owe on this Note at once (accelerate) and notice that we have accelerated. This written loan agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

UTAH RESIDENTS: This Agreement is the final expression of the agreement between you and us and it may not be contradicted by evidence of an alleged oral agreement.

WISCONSIN RESIDENTS: NOTICE TO CUSTOMER: (A) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT, EVEN IF OTHERWISE ADVISED; (B) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES; (C) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN; AND (D) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE OF THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

MARRIED WISCONSIN RESIDENTS: No provision of any marital agreement, unilateral statement or court order applying to marital property will adversely affect a creditor's interest unless prior to the time credit is granted, the creditor is furnished with a copy of the agreement, statement or court order, or has actual knowledge of the provision. If you are married, by signing this Loan Agreement, you are confirming that this loan obligation is being incurred in the interest of your marriage and your family. If the loan for which you are applying is granted, you will notify the Lender if you have a spouse who needs to receive notification that credit has been extended to you.

GENERAL NOTICE TO CUSTOMER:
(a) DO NOT SIGN THIS BEFORE YOU READ THE ENTIRE AGREEMENT, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND THE FINANCE CHARGE DISCLOSED MAY BE LESS.

TYESHA JACKSON WISE

125807310

BY: UPGRADE, INC.

ATTORNEY-IN-FACT FOR TYESHA JACKSON WISE

(Signed Electronically)